PEOPLE v JENKINS

Docket No. 213311. Submitted April 6, 2000, at Lansing. Decided December 19, 2000, at 9:00 A.M.

Willie C. Jenkins, Sr., was convicted by a jury in the Saginaw Circuit Court, Patrick M. Meter, J., of common-law obstruction of justice, conspiracy to obstruct justice, Election Law violations resulting from the appointment of an ineligible election assistant, and the wilful failure to perform a duty imposed by the Election Law. The convictions arose out of an investigation of possible vote tampering in the August 6, 1996, primary elections in certain communities in Saginaw County, including Buena Vista Township, where the defendant was the township clerk. In the course of the investigation, state police officers went to the Buena Vista Township Clerk's Office and asked to be able to review absentee voter ballot applications and the absentee voter poll book. When the defendant refused the officers permission to make such a review, the officers secured a search warrant and subpoena for election documents and records pertaining to absentee voting. When asked by the police who was authorized to collect and receive absentee voter applications and ballots, the defendant replied that he, his deputy clerk, Maxine King, and an administrative services clerk, Meatha Winbush, were authorized. During the searches conducted pursuant to the first warrant and two subsequent search warrants, no documents were found that indicated that Robert Woods, Jr., had been appointed as an assistant in the election process. A one-man grand jury was established to conduct an investigation into alleged Election Law violations surrounding the August 1996 elections. On October 31, 1996, the defendant testified before the grand jury that he had appointed Robert Woods as election assistant on July 9, 1996, that he had administered the oath appointing Woods to collect absentee ballots, and that an oath certificate was filed in the clerk's office verifying the event. After giving this testimony, the defendant asked for a break. When the proceedings resumed, the grand jury asked the defendant if the oath certificate was available. Shortly thereafter, police arrived at the defendant's office with a subpoena for the oath certificate. Maxine King informed the police officer that the oath certificate was available and pointed to an in-out basket that contained only one document, the oath certificate,

which bore Woods' name and was dated July 9, 1996, but which was not signed by either Woods or the defendant. The oath certificate was presented to the grand jury. King testified that she had prepared the oath certificate in July 1996. The grand jury indicted the defendant, and an information was subsequently filed charging the defendant with common-law obstruction of justice and conspiracy to obstruct justice, alleging that the oath certificate that was presented to the grand jury as having been prepared on July 9, 1996, had been prepared by King on the date of the defendant's testimony before the grand jury; with Election Law violations, alleging that Woods was ineligible to be an election assistant because he and his brother were candidates for reelection on the August 1996 ballot; and with wilful failure to perform a duty imposed by the Election Law, alleging that the defendant had a duty to allow the police to inspect the absentee voter ballot applications and lists without their first securing a search warrant and subpoena. The defendant was bound over for trial on the charges. The circuit court denied the defendant's motions to quash the charges of obstruction of justice, conspiracy to obstruct, and failure to perform a duty. At trial, there was forensic evidence that an examination of the ribbon of a typewriter at the township clerk's office indicated that the language appearing on the oath certificate had been typed between August and October of 1996, and there was testimony that the defendant had called King in the late morning of the day that he had testified before the grand jury. Following conviction, the court sentenced the defendant to concurrent prison terms of fifteen months to five years for the convictions of obstruction of justice and conspiracy and ninety days for the convictions of violation of the Election Law and failure to perform a duty. The defendant appealed.

The Court of Appeals *held*:

1. To warrant a charge of common-law obstruction of justice, a defendant's conduct must fall within the scope of one of the offenses that were recognized in the common law to constitute an obstruction of justice. Although the list of offenses found in 4 Blackstone, Commentaries, pp *127-*141, is illustrative of the types of offenses that were recognized at common law as constituting obstruction of justice, that list is not comprehensive. The dispositive inquiry is not whether the fabrication of false, inaccurate, or misleading evidence for presentation to a grand jury proceeding falls within one of the categories listed in Blackstone, but rather whether such conduct was recognized at common law as obstruction of justice.

2. Although there is no Michigan case law holding that the specific conduct charged here was recognized at common law as obstruction of justice, the knowing assistance in fabricating false and fraudulent documents for presentation to a grand jury with the intent to impede, thwart, or interfere with the administration of justice constitutes obstruction of justice. Likewise, one who agrees, understands, plans, designs, or schemes to commit acts that obstructed or were intended to obstruct the administration of justice engages in conspiracy to commit obstruction of justice. Accordingly, the district court did not err in binding over the defendant on the charges of obstruction of justice and conspiracy to obstruct justice, and the circuit court did not err in denying the defendant's motion to quash those charges.

3. Section 931 of the Election Law, MCL 168.931; MSA 6.1931, makes it a misdemeanor for a person to wilfully not perform a duty imposed by the Election Law. Section 760 of the Election Law, MCL 168.760; MSA 6.1760, provides that absentee voter applications and lists are to be open to public inspection at all reasonable hours. The testimony that the defendant initially refused to permit the police to inspect those records during regular business hours was sufficient to find that there was probable cause to believe that the defendant committed the charged offense. Accordingly, the district court properly bound over the defendant for trial on the charge of failing to perform a duty imposed by the Election Law, and the circuit court properly denied the defendant's motion to quash that charge.

4. The circuit court did not err in admitting King's grand jury testimony. The grand jury testimony was introduced after the prosecution had introduced sufficient evidence to establish that the defendant had conspired with King to obstruct justice by the preparation of the false oath certificate. Accordingly, the grand jury testimony was properly admitted pursuant to MRE 801(d)(2)(E).

5. The circuit court properly refused to let the defendant present evidence concerning the provisions of MCL 750.492; MSA 28.760, a general criminal statute relating to the failure of an official to allow inspection of public records. The defendant was charged with specific acts that constituted a criminal violation of the provisions of the Election Law. Under the circumstances, the general criminal provision was inapplicable and irrelevant, and reference to the general criminal provision would only serve to confuse the jury.

6. The defendant's fifteen-month minimum sentences were proportionate to the offense and the offender, and the court's imposition of those sentences did not constitute an abuse of discretion.

Affirmed.

1. CRIMINAL LAW — OBSTRUCTION OF JUSTICE.

    Obstruction of justice is a category of offenses that interfere with public justice and is not limited to the twenty-two offenses listed in 4 Blackstone, Commentaries, pp *127-*141, as constituting obstruction of justice.

2. CRIMINAL LAW — OBSTRUCTION OF JUSTICE — FABRICATING FALSE DOCUMENTS FOR GRAND JURY.

    The knowing assistance in fabricating false and fraudulent documents for presentation to a grand jury with the intent to impede, thwart, or interfere with the administration of justice constitutes the common-law offense of obstruction of justice for which criminal charges may be brought under the statute making it a felony to commit all those offenses indictable at common law for which there was no specific statutory provision (MCL 750.505; MSA 28.773).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Amy M. Ronayne*, Assistant Attorney General, for the people.

*Law Offices of Frank and Forster, P.C.* (by *Stuart W. Hyvonen*), for the defendant.

Before: WILDER, P.J., and MCDONALD and DOCTOROFF, JJ.

WILDER, P.J. Following a jury trial, defendant was convicted of common-law obstruction of justice for the fabricating of false, inaccurate, or misleading evidence that was material to a grand jury investigation, MCL 750.505; MSA 28.773, conspiracy to obstruct justice, MCL 750.157a; MSA 28.354(1), and two Election Law violations by appointing as an assistant to accept delivery of absentee voter ballots one who was a candidate on the ballot and a member of a candidate's immediate family, MCL 168.764b(3); MSA 6.1764(2)(3), MCL 168.931; MSA 6.1931, and willful failure to perform a duty imposed by MCL 168.760; MSA 6.1760 by refusing to allow public inspection of

absentee voter ballot applications or lists, MCL 168.931(1)(h); MSA 6.1931(1)(h). On his convictions for obstruction of justice and conspiracy to obstruct justice, the trial court sentenced defendant to concurrent terms of fifteen months to five years in prison. The convictions for violations of the Election Law and for failure to perform a duty resulted in sentences of ninety days in prison. Defendant appeals as of right. We affirm.

I. FACTS AND PROCEDURAL BACKGROUND

Defendant was a resident of Buena Vista Township in Saginaw County, where he held the office of Buena Vista Township Clerk. Defendant's convictions arose out of a grand jury investigation into alleged Election Law violations involving the August 6, 1996, primary election in Saginaw County and defendant's appointment of Robert Woods, Jr. (Woods), a Saginaw County commissioner, to the position of election assistant despite the fact that Woods and his brother, James Woods, a township trustee for Buena Vista Township, both faced reelection and appeared on the ballot for their respective positions. Woods' candidacy for reelection was unopposed; however, James Woods was opposed by another candidate.

On August 1, 1996, the Michigan State Police received a number of complaints about possible voter tampering in certain communities in Saginaw County, including Buena Vista Township. These complaints arose after more than two hundred envelopes and absentee voter applications had been mailed from Lansing and received by the Saginaw City Clerk. The police department began a prompt investigation of

the complaints because the primary election was to be held on August 6, 1996.

Detective Michael Hosh, Lieutenant Mark Dougovito, and Lieutenant Charles Bush arrived at the Buena Vista Township Clerk's Office on August 5, 1996, to investigate the complaints, but defendant refused to permit the officers to review voting records for the township involving absentee ballot applications and the absentee poll book containing the records of applications that had been mailed for the current primary election.[1] Detective Hosh subsequently produced a search warrant for the records, and Lieutenant Dougovito produced a subpoena for election documents and records pertaining to absentee voting. This search, however, did not reveal any documentation regarding who was appointed to accept, deliver, or return absentee voter applications and ballots.

A second search warrant of the absentee ballots was executed on August 6, 1996, after the election polls closed, and a third search warrant seeking all records pertaining to absentee voting was executed on August 28, 1996. Neither an oath certificate nor any other document in the name of Robert Woods was discovered during any of the three searches.[2] When the police asked defendant who was authorized to collect and receive absentee voter applications and

---

[1] Defendant's refusal to allow inspection of the records was the basis for the failure to perform duty charge in count IV.

[2] The two relevant election documents in this case are (1) a certificate of oath and affirmation (oath certificate) purportedly issued to Robert Woods, Jr., on July 9, 1996, that should have been on file in the clerk's office, and (2) a wallet-sized election card (election card) that would serve as Woods' authorization to assist in official election-related activities.

ballots, defendant replied himself, Maxine King, who was the deputy clerk, and Meatha Winbush, who was an administrative services clerk.

A one-man grand jury proceeding commenced on September 19, 1996, before the Honorable Leopold Borrello, at which defendant testified, among other things, that he appointed Woods as an assistant in the election process.[3] In response to this testimony, which was the first time the officers became aware that an additional person had been appointed to collect absentee voter applications and ballots, Investigator Charles Brown of the Saginaw County Prosecutor's Office asked Woods, who was sequestered in the jury room, whether he had an election card authorizing him to receive ballots. Woods produced an election card, which Brown presented to the grand jury. Defendant then continued his grand jury testimony, indicating that he administered the oath appointing Woods to collect absentee ballots on July 9, 1996, and that an oath certificate was filed in the clerk's office verifying the event.

At approximately 11:30 A.M., defendant requested a bathroom break, which lasted about fifteen minutes. After the grand jury proceeding resumed, the grand juror asked defendant to contact defendant's office to determine whether the oath certificate was available for police officers to retrieve. The proceeding was then adjourned for lunch and to allow defendant to call his office.

During the lunch recess of the grand jury proceeding on October 31, 1996, Lieutenant Dougovito ob-

---

[3] Defendant's testimony at the grand jury proceeding did not commence until the morning of October 31, 1996.

tained a subpoena for the Woods oath certificate and went to the clerk's office to obtain the document. He arrived between 12:15 and 12:20 P.M. and was met by King and Winbush. King informed the officer that the document was available and pointed to the top tray of an in-out basket that contained only one document, the oath certificate. The unsigned oath certificate was dated July 9, 1996. When the officer asked King when the document was prepared, King looked to a typewriter and then responded "whatever date is on the document is when it was produced." King also indicated that there were no other documents showing that Woods was a registrar, but that she was present when defendant gave Woods the oath. Lieutenant Dougovito retrieved the oath certificate from the basket, returned to the court with King and Winbush, and presented the grand jury with the document. The grand jury proceeding reconvened at approximately 1:30 P.M., and defendant continued to testify until about 2:15 P.M.

King also testified at the grand jury proceeding that the first time she saw the Woods oath certificate was in July 1996, when she prepared it on the typewriter in the township offices. According to King, the oath certificate was the only document relating to the appointment of Woods as deputy registrar and election officer. King testified that she prepared the oath certificate pursuant to defendant's instructions in July, that she was not present when the oath was administered and did not know what day Woods appeared for the oath, that she only inserted the information defendant told her to type, and that she gave the oath certificate to defendant. King denied preparing the oath certificate after July 9, 1996, or on

October 31, 1996, and could not explain how the document was overlooked during the execution of three separate search warrants. King further acknowledged having seen the election card before, but could not recall when she typed it (it was not typed at the same time as the oath certificate) and did not know why defendant would have signed the election card but not the oath certificate. King further denied receiving a telephone call from defendant during lunch on October 31, 1996, and denied having any discussions with defendant about the oath certificate on that day.

Defendant was indicted by the grand jury and subsequently was charged by information.[4] Following a preliminary examination, defendant was bound over as charged. Defendant moved to quash the charges,

---

[4] Woods and King were also indicted by the grand jury after it became apparent that King prepared an oath of office certificate on October 31, 1996 (the date defendant testified before the grand jury), but falsely dated it July 9, 1996 (the date Woods was appointed election assistant). Woods was indicted on charges of receiving absentee ballots when he was ineligible to do so because of his own candidacy and the candidacy of his brother, of tampering with absentee ballots, and of possession of absentee ballots. Woods was subsequently charged by information and bound over for trial on election fraud charges. In a pretrial motion, Woods argued the defense of "entrapment by estoppel," allegedly having relied in good faith on defendant's representation that Woods was eligible to act as an election assistant. Woods subsequently requested a jury instruction regarding that defense. The trial court denied Woods' request for the jury instruction, but stayed proceedings to allow Woods to file an interlocutory appeal in this Court. This Court granted leave and, on June 27, 2000, issued a published opinion, holding that the trial court erred in relying on Woods' grand jury testimony to deny the instruction rather than conducting an evidentiary hearing regarding the issue of entrapment by estoppel. The matter was remanded for an evidentiary hearing, with guidance to the trial court, the bench, and the bar concerning how to analyze the defense of entrapment by estoppel, an issue of first impression in Michigan. *People v Woods*, 241 Mich App 545; 616 NW2d 211 (2000).

King was also indicted on charges of obstruction of justice and conspiracy to commit obstruction of justice, as well as for perjury before the grand jury arising out of her role in fabricating the oath certificate, but the record is unclear with respect to the outcome of the charges against her.

arguing that Michigan does not recognize a general common-law obstruction of justice offense and that a common-law obstruction of justice offense must be accomplished by a recognized means of obstruction, citing *People v Thomas*, 438 Mich 448, 457-458; 475 NW2d 288 (1991), and *People v Vallance*, 216 Mich App 415, 419; 548 NW2d 718 (1996). Defendant contended that the offenses with which he was charged were not recognized at common law and, thus, must be dismissed.

The prosecutor responded that although there was no case law establishing such a crime in Michigan, the requirement that the offense charged must have been recognized at common law was met because the offenses of falsifying proceedings in a court of record, perjury, and negligence of public officers were recognized offenses within the category of obstruction offenses. Alternatively, the prosecutor argued that the common-law offenses within the category of obstruction of justice were not limited to those enumerated by Blackstone[5] and, therefore, whether defendant's conduct falls within one of those recognized offenses is not dispositive.

The trial court denied defendant's motion to quash the obstruction of justice and conspiracy charges, stating as follows:

In the instant case, Defendant is charged with obstructing justice by fabricating false, inaccurate or misleading evidence material to a grand jury investigation. The Court finds that obstruction of justice is not limited to the twenty-two offenses as cited by Blackstone. Obstruction of justice is a common-law offense, but the ways one can obstruct

---

[5] 4 Blackstone, Commentaries, pp *127-*141.

justice are not limited to committing Blackstone's enumerated common-law offenses. For instance, the Court notes that in [*United* States] *v Mullins*, 22 F3d 1365 (CA 6, 1994), the Sixth Circuit affirmed defendant's convictions for conspiracy to obstruct justice and for obstruction of justice based upon defendant's alteration of police flight logs subpoenaed by a grand jury. In [*United* States] *v Siegel*, 263 F2d 530 (CA 2, 1959), the Second Circuit affirmed defendant's conviction for obstructing justice based upon defendant's fabrication of witness interview memoranda requested by a grand jury. These cases are analogous to the type of obstruction alleged in the instant case.

*     *     *

Therefore, based on the foregoing, Defendant's first Motion to Quash and Dismiss Count I is denied.

Defendant's application for leave to appeal the trial court's ruling was denied by this Court for failure to persuade this Court that the questions presented warranted review. *People v Jenkins*, unpublished order of the Court of Appeals, entered May 27, 1998 (Docket No. 211647).

At trial, in addition to the information revealed above, the prosecution presented testimony from Winbush that King received a telephone call from defendant on October 31, 1996, at around 11:30 A.M., which lasted about five minutes. Winbush indicated that King usually took her lunch break out of the office between 11:00 A.M. and 12:20 P.M., but on that day, she was taking her lunch break in the office. After the call, King left her office, went to a drawer by the typewriter, removed a document, began typing on the document, and then entered defendant's office when she finished. Winbush did not notice what King did with the document, but noted that King's behavior

was out of character, because King usually did not do any work during her lunch break.

Winbush further testified that, about five or ten minutes later, defendant called the office again and asked to speak with King. King spoke briefly with defendant and then went into the storage room. Winbush testified that no one other than King used the typewriter that day and that she did not recall seeing a document appointing Woods to the office of deputy registrar/elections officer before that day. She further stated that the only persons authorized to work with absentee voter materials were herself, defendant, and King. Winbush denied that defendant asked her to type an oath of office document for Woods on October 31, 1996, or any other day.

Michelle Dunkerley, a forensic document examiner with the Michigan State Police, testified that she examined the typewriter, cartridge, and ribbons as well as photocopies and originals of the oath certificate and the election card. Dunkerley determined that the last text on the ribbon was text from the oath certificate and that the certificate was typed using the typewriter between August and October 1996, but that the ribbon did not contain text from the election card, which was dated July 9, 1996.

Finally, defendant testified that in August 1996, only he and Woods actually collected absentee ballots, although he did not see Woods bring in any ballots. Defendant acknowledged that he spoke with Woods about assisting with absentee voters in the spring of 1996 and that he was aware Woods was on the ballot for Saginaw County commissioner, but thought it was not a problem, because Woods was running unopposed. Defendant testified that he did

not consider that Woods' brother was also on the ballot. Defendant testified that Woods came to the clerk's office in July 1996, took an oral oath of office, and received an election card from him after defendant signed it. When handed the oath certificate at trial, defendant indicated that it was the first time he saw that document, but that it looked like the form used by his office. Defendant acknowledged that he gave King instructions to prepare Woods' oath certificate in early July after he administered the oath to Woods, but he did not recall whether it was in fact prepared and did not recall signing the document.

Regarding the failure to perform duty charge, defendant testified that the officers requested to *have* the absentee voter ballots, applications, and poll book, not to view or inspect them, and that he declined their request absent a court order on the basis of advice he received from his attorney. Defendant further testified that he was only asked by the police who was authorized *from his office* to handle absentee voter materials and that he did not mention Woods because his attorney advised him not to volunteer any additional information. Defendant denied asking King to type an oath certificate during the telephone call he made to her during the grand jury proceeding. Defendant also denied asking King to recreate the document after she indicated it was lost and denied that he did anything to hinder or obstruct the grand jury investigation.

Following deliberations, defendant was convicted as charged. His subsequent motion for bond and to stay further execution of the sentence pending appeal was denied by the trial court, as was his motion for bond pending appeal and for stay in this Court. *Peo-*

*ple v Jenkins*, unpublished order of the Court of Appeals, entered November 4, 1998 (Docket No. 213311). Defendant appeals.

## II. DISCUSSION

### A. OBSTRUCTION OF JUSTICE

Defendant first argues that the district court erred in ordering him bound over for trial on the charges of obstruction of justice and conspiracy to commit obstruction of justice and that the circuit court erred in denying his motion to quash the charges. We disagree.

A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial. *People v Northey*, 231 Mich App 568, 574; 591 NW2d 227 (1998); *People v Tower*, 215 Mich App 318, 320; 544 NW2d 752 (1996). A district court must bind over a defendant for trial when the prosecutor presents competent evidence constituting probable cause to believe that a felony was committed and that the defendant committed the offense. MCL 766.13; MSA 28.931; MCR 6.110(E); *Northey, supra* at 574. A district court's finding of probable cause will not be disturbed unless the determination is wholly unjustified by the record. *Id.* Further, whether alleged conduct falls within the scope of a criminal law is a question of law subject to review de novo. *Thomas, supra* at 452.

MCL 750.505; MSA 27.773 provides:

Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty

of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.

Obstruction of justice has been defined as "an interference with the orderly administration of justice." *Thomas, supra* at 455; *Tower, supra* at 320. Obstruction of justice, however, is not a single offense, but a category of crimes that interfere with the public administration of justice. *Thomas, supra* at 457; *Vallance, supra* at 419. Thus, in order to sustain a charge of common-law obstruction of justice, common-law precedence for the specific offense charged as obstruction of justice must exist. *Thomas, supra* at 458.

In *Thomas, supra* at 451, the defendant allegedly made a false statement in a police report in support of an arrest warrant and was charged with obstruction of justice and conspiracy to commit obstruction of justice, among other offenses. The Supreme Court found, in relevant part, that the obstruction of justice charge was not sustainable because there was no recognized obstruction of justice crime at common law encompassing the defendant's conduct. The Court stated that "[t]o warrant the charge of common-law obstruction of justice, defendant's conduct must have been recognized as one of the offenses falling within the category 'obstruction of justice.' " listed by Blackstone.[6] *Id.* at 457-458. The Court noted that although

---

[6] The twenty-two offenses listed by Blackstone are:

1. Imbezzling or vacating records, or falsifying certain other proceedings in a court of judicature . . . . 2. [induce a prisoner] to accuse and turn evidence against [another] . . . . 3. . . . obstructing the execution of lawful process. . . . 4. An escape of a person arrested upon criminal process, by eluding the vigilance of his

the defendant's conduct was a substantial impediment to the administration of justice, there was no basis in common law for an obstruction of justice charge against the defendant for his conduct. *Id.* at 458.[7]

In *Vallance, supra* at 416, decided after *Thomas,* the defendant was convicted of obstruction of justice for the intimidation of a witness in a criminal proceeding. On appeal, this Court questioned whether

keepers before he is put in hold . . . . 5. Breach of prison by the offender himself, when committed for any cause . . . . 6. Rescue is the forcibly and knowingly freeing another from an arrest or imprisonment . . . . 7. . . . returning from transportation . . . before the expiration of the term for which the offender was ordered to be transported . . . . 8. . . . taking a reward, under pretence of helping the owner to his stolen goods. . . . 9. Receiving of stolen goods, knowing them to be stolen . . . . 10. . . . the party robbed not only knows the felon, but also takes his goods again, or other amends, upon agreement not to prosecute . . . . 11. Common barretry is the offence of frequently exciting and stirring up suits and quarrels . . . . 12. . . . officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party with money or otherwise . . . . 13. Champerty . . . being a bargain with a plaintiff or defendant . . . to divide the land or other matter sued for between them . . . . 14 . . . . compounding of informations upon penal statutes . . . . 15. . . . conspiracy . . . to indict an innocent man . . . . 16 . . . . perjury . . . . 17. Bribery . . . . 18. Embracery is an attempt to influence a jury corruptly to one side . . . . 19. The false verdict of jurors, whether occasioned by embracery or not . . . . 20. . . . . negligence of public officers . . . . 21. . . . . oppression and tyrannical partiality of judges, justices, and other magistrates, in the administration and under the colour of their office. . . . 22. . . . extortion . . . . [Blackstone, *supra* at *127-*141.]

[7] The obstruction of justice charge against the defendant was initially dismissed by the trial court and affirmed by this Court on the ground that the obstruction of justice charge was precluded by the statutory offense of willful failure to uphold the law, MCL 752.11; MSA 28.746(101). *Thomas, supra* at 452. On appeal, however, the Supreme Court agreed that a conviction under MCL 750.505; MSA 28.773 cannot be sustained when a charge sets forth all elements of a statutory offense, but then concluded that the common-law charge of obstruction of justice was not precluded by the statute making it an offense to wilfully fail to uphold the law, because the offenses have different elements. *Thomas, supra* at 453-455.

the *Thomas* opinion limited the scope of offenses constituting "obstruction of justice" to the twenty-two offenses listed by Blackstone or whether the Court merely referred to Blackstone's list to illustrate the point that, at common law, "obstruction of justice" was not a single offense but rather a category of offenses. *Id.* at 418-419. This Court ultimately concluded that obstruction of justice is a category of offenses not limited to the twenty-two offenses listed by Blackstone:

> We find nothing in the *Thomas* analysis to suggest that offenses recognized at common law as obstruction of justice are, nonetheless, not to be so considered if they are not included in the Blackstone list. . . . Accordingly, we conclude that the Supreme Court's reference in *Thomas* to Blackstone was merely to illustrate the point that at common law, "obstruction of justice" is not a single offense, but a category of offenses that interfere with public justice. . . . A charge of obstruction of justice was warranted if defendant's conduct would have been recognized as one of the many offenses falling within the rubric "obstruction of justice" at common law. [*Id.* at 419 (citations omitted).]

Accord *People v Davis*, 408 Mich 255, 286, n 7; 290 NW2d 366 (1980) (LEVIN, J., concurring) ("Blackstone's compilation did not purport to be comprehensive . . . ."). Therefore, this Court found that intimidation of a witness in a judicial proceeding was an indictable offense at common law, associated with the concept of obstruction of justice, and affirmed the defendant's conviction. *Vallance, supra* at 419.

Applying these principles to the instant case, the dispositive inquiry is whether defendant's conduct, the fabricating of false, inaccurate, or misleading evidence that is material to a grand jury proceeding,

constitutes an offense indictable at common law. Although our research reveals no Michigan case law holding that the specific conduct with which defendant was charged was recognized at common law as obstruction of justice, we reiterate this Court's observation in *Vallance* that we are not limited to the enumerated activities in Blackstone in resolving this question.

The evidence in this case showed that defendant created or assisted in the creation of a false, inaccurate, and misleading document that was material to a grand jury investigation. Defendant testified before the grand jury that an oath certificate in Woods' name dated July 9, 1996, existed at the clerk's office. When forced to produce the document, he enlisted the assistance of King to create the document and substantiate his falsity, knowing that the document did not exist at the time he made the statement to the grand jury. Further, the lab report and testimony from Dunkerley verified that the last document typed on October 31, 1996, in the Buena Vista Township Clerk's Office was an oath certificate made out in Woods' name. Testimony from Winbush verified that King typed this document after receiving a telephone call from defendant around 11:30 A.M. on October 31, 1996, during a recess of the grand jury. Further, the oath certificate bearing Woods' name was found by the police that same afternoon in a box in the clerk's office, although it had not been discovered during the execution of three prior search warrants for the office. We conclude that the knowing assistance in fabricating false and fraudulent documents for presentation to a grand jury, with the intent to impede, thwart, or interfere with the administration of justice,

constitutes obstruction of justice. Likewise, one who agrees, understands, plans, designs, or schemes to commit acts that obstructed or were intended to obstruct the administration of law engages in conspiracy to commit obstruction of justice. See *People v Ormsby*, 310 Mich 291, 300; 17 NW2d 187 (1945). See also *United States v Mullins, supra* (obstruction of justice was proved by evidence that defendant induced certain police officers to alter other officers' flight log, creating false and fraudulent entries, and then producing the altered flight logs in response to a grand jury subpoena issued in connection with a federal grand jury investigation); *United States v Siegel, supra* at 531-532 (fabrication of false memoranda and swearing that the documents provided were complete records constituted obstruction of justice and perjury).

Accordingly, we conclude that defendant's conduct in this case falls within the category of offenses that comprise common-law obstruction of justice, and the circuit court did not err in denying defendant's motion to quash the charges of obstruction of justice and conspiracy.

### B. FAILURE TO PERFORM A DUTY

Defendant next contends that the trial court erred in denying his motion to quash the charge of failure to perform a duty brought under MCL 168.931(1)(h); MSA 6.1931(1)(h) and MCL 168.760; MSA 6.1760. We disagree.

Defendant was charged with failure to perform a duty under MCL 168.931(1)(h); MSA 6.1931(1)(h), which provides that "a person shall not willfully fail

to perform a duty imposed upon that person by this act . . . ." The duty that defendant allegedly failed to perform under the act is set forth in MCL 168.760; MSA 6.1760, which provides in relevant part that absentee voter "[a]pplications and lists shall be open to public inspection at all reasonable hours." Failure to perform the requisite duty is a misdemeanor. MCL 168.931(2); MSA 6.1931(2). The record is clear that defendant denied the officers' request to review the voter applications and lists, and the denial was contrary to the statute. The trial court did not err in finding that probable cause existed to believe that defendant committed the charged offense. Defendant's motion to quash was properly denied.[8]

### C. EVIDENTIARY ISSUES

Defendant argues that the trial court abused its discretion by permitting grand jury testimony of alleged coconspirator King into evidence because there was

---

[8] Defendant's additional argument that his refusal to allow inspection of the documents was protected under Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, which requires a person desiring to inspect or receive public records to make an oral or written request for the public record to the public body, is misplaced. Defendant was charged with failure to perform a duty under § 931 of the Michigan Election Law, MCL 168.931(1)(h); MSA 6.1931(1)(h), for his failure to comply with MCL 168.760; MSA 6.1760, that requires that voter applications and lists be open for public inspection at all reasonable hours. At no time did the police officers submit a FOIA request for the voter information, and defendant was not charged with violating provisions in the FOIA. As the trial court properly noted, the jury was asked to consider the appropriate laws under the Election Law, and introducing rules under the FOIA pertaining to the general maintenance of public records would only confuse the jury and inject laws not germane to the issues to be decided. Therefore, the trial court did not err in denying defendant's motion to quash the charge and did not abuse its discretion in denying defendant's request to introduce evidence regarding the FOIA as a defense to the failure to perform a duty charge.

insufficient proof of a conspiracy, independent of her testimony. We disagree.

This Court reviews a trial court's evidentiary ruling for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the court acted, would say there was no justification or excuse for the ruling made. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996).

King's grand jury testimony was introduced as evidence at trial pursuant to MRE 801(d)(2)(E), which provides that a statement is not hearsay if

> [t]he statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy.

King's testimony was introduced through the testimony of Detective Hosh near the end of the prosecution's case after sufficient evidence of the conspiracy to commit obstruction of justice had been admitted. Before King's testimony was presented, Lieutenant Dougovito testified that the police executed three search warrants at the township clerk's office and, on each occasion, defendant reported that the only individuals authorized to accept absentee voter ballots and related documents were himself, King, and Winbush. In addition, Winbush testified that defendant called King at the clerk's office around 11:30 A.M. on October 31, 1996, during a break in the grand jury proceeding. After the telephone call concluded, King immediately typed a document that resembled the Woods oath of office. Winbush stated

that King never interrupted her lunch for any reason, but on October 31, 1996, in response to the call from defendant, she typed this document during her lunch break. Winbush further testified that she had no knowledge that Woods was authorized to collect absentee voter ballots.

Further, defendant testified during the grand jury proceeding, before King testified, that King witnessed Woods sign the oath certificate and that the document could be found in defendant's office. When asked to produce the document for the court's review, defendant said he could comply. The record shows that a few minutes later, defendant requested a bathroom break, during which time he called King at the township office. When defendant returned from the break, he was informed that police officers were going to the clerk's office to retrieve Woods' oath certificate. Defendant was then asked to contact his office and inform his staff to locate the document because the police were coming for it. The police arrived at the township offices and located Woods' oath certificate in a basket on King's desk, despite the fact that during three prior searches of the township offices by the police this document was nowhere to be found. Finally, forensic evidence was introduced establishing that the last text typed on the typewriter retrieved from the township offices on October 31, 1996, was the text from Woods' oath of office.

On this record, we conclude that the prosecutor proved the existence of a conspiracy by a preponderance of the evidence before King's grand jury testimony was introduced. Having established independent proof of the conspiracy, King's statements made during the course and in furtherance of the conspir-

acy were properly admitted under MRE 801(d)(2)(E).
See *People v Rockwell,* 188 Mich App 405, 407-408; 470
NW2d 673 (1991). We find no abuse of discretion.

Defendant next argues that the trial court abused
its discretion by denying defendant's request to admit
into evidence a copy of MCL 750.492; MSA 28.760 in
defense of the charge of willful failure to perform a
duty required by the Election Law. We disagree.

MCL 750.492; MSA 28.760 provides:

> Any officer having the custody of any county, city or
> township records in this state who shall when requested fail
> or neglect to furnish proper and reasonable facilities for the
> inspection and examination of the records and files in his
> office and for making memoranda of transcripts therefrom
> during the usual business hours, which shall not be less
> than 4 hours per day, to any person having occasion to
> make examination of them for any lawful purpose shall be
> guilty of a misdemeanor, punishable by imprisonment in the
> county jail not more than 1 year, or by a fine of not more
> than $500.00 The custodian of said records and files may
> make such reasonable rules with reference to the inspec-
> tion and examination of them as shall be necessary for the
> protection of said records and files, and to prevent interfer-
> ence with the regular discharge of the duties of such
> officer. The officer shall prohibit the use of pen and ink in
> making copies or notes of records and files in his office. No
> books, records and files shall be removed from the office of
> the custodian thereof, except by the order of the judge of
> any court of competent jurisdiction, or in response to a sub-
> poena duces tecum issued therefrom . . . .

Contrary to defendant's contention, this statute is
not applicable to the instant case. Defendant was ini-
tially asked by the officers to inspect the absentee
voter records, not to remove them from the office.
Indeed, the officers did not reference a search war-
rant or a seizure of the records until after defendant

denied their request. Defendant denied the request to inspect the records in violation of MCL 168.760; MSA 6.1760. The trial court properly noted that the only issue before the jury was whether defendant violated the specific provisions in the Election Law under which he was charged, and reference to any other criminal statute was simply not relevant and would have unnecessarily confused the jury. See MRE 403. The trial court properly excluded evidence of MCL 750.492; MSA 28.760.[9]

### D. SENTENCING

Defendant argues that his concurrent sentences of fifteen months to five years for the obstruction of justice and conspiracy convictions are grossly disproportionate under the circumstances. We disagree.

A trial court's imposition of sentence is reviewed for an abuse of discretion. An abuse of discretion occurs if the sentence violates the principle of proportionality, which requires that a sentence imposed by the trial court be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990); *People v Parrish*, 216 Mich App 178, 184; 549 NW2d 32 (1996).

MCL 750.505; MSA 28.773 states that common-law felonies are punishable by imprisonment of not more than five years or by a fine of not more than $10,000,

---

[9] We also reject defendant's argument that he did not release the absentee voter records to the police because, pursuant to the advice of his attorney, he believed it was a crime to do so without a court order. That defendant's attorney purportedly advised defendant not to release the information is not a defense to a charge of willful failure to perform a duty, MCL 168.931(1)(h); MSA 6.1931(1)(h); MCL 168.760; MSA 6.1760.

or both in the discretion of the court. Under MCL 750.157a(a); MSA 28.354(1)(a), conspiracy is punishable by a penalty equal to that which could be imposed if the defendant had been convicted of committing the crime he conspired to commit and, in the discretion of the court, an additional penalty of a $10,000 fine may be imposed. As the trial court noted, the law does not provide any sentencing guidelines for the obstruction of justice and conspiracy offenses of which defendant was convicted.

The trial court reviewed defendant's education, work history, community service, health, family circumstances, and financial situation. The trial court further considered the nature and seriousness of the offenses, noting that defendant was reelected by as few as twenty-two votes, he was found to have fabricated documentary evidence in a grand jury proceeding, he represented fabricated evidence as valid to the grand jury, and the fabrication was accomplished through conspiracy. The trial court then made the following remarks before imposing sentence:

> The Court will say that this is a difficult case, because this is a defendant standing before the Court, Mr. Jenkins, who has a very good background, and who has, at times, served as a model to not only the youth of the community, but many adults, and who was entrusted with a significant amount of responsibility and trust, both as a teacher, coach, and ultimately an elected public official, and a clerk of Buena Vista Township, and who has, for whatever reason, violated that trust in a significant way.
>
> The lesson to be imparted today is that the law will not tolerate tampering with the ballot box, including how people get their absentee ballots into that ballot box or otherwise, or obstructing the justice system. Our right to vote and our justice system are two of the cornerstones of our

> democracy and our precious freedom, and they so impor-
> tantly distinguish and characterize our form of government.
>
> To punish the defendant and to deter others from similar
> conduct, the Court imposes the following sentence. On
> Counts I and II, obstruction of justice and conspiracy, it is
> the sentence of the Court that the defendant be committed
> to the jurisdiction of the Michigan Department of Correc-
> tions and thereafter placed in an appropriate state penal
> institution. The Court fixes the minimum terms in Counts I
> and II, in my discretion, at 15 months, the maximum is set
> by law at five years, and I fix it in each count at five years.

We conclude that there was ample justification for the sentence imposed. The trial court properly considered defendant's background, his service to the community, and his position as an elected township official who was granted the trust of his community, but violated that trust by committing the instant offenses. Defendant's fifteen-month minimum sentences were proportionate to the offense and the offender and did not constitute an abuse of discretion. *Milbourn, supra.*

Affirmed.