# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

FREDERICK KYLE YOUNG,

      Defendant-Appellant.

UNPUBLISHED
April 20, 2017

No. 330135
Wayne Circuit Court
LC No. 15-001601-01-FC

Before: MURPHY, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant, Frederick Young, of first-degree premeditated murder, MCL 750.316(1)(a), arising from the death of his wife, Desanee Young. The trial court sentenced Young to life imprisonment without parole. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On June 2, 2014, between 9:00 a.m. and 10:00 a.m., a man discovered Desanee's body inside a red Durango parked in front of an abandoned property. Although the time of death could not be confirmed, the medical examiner testified that Desanee had been stabbed 24 times and had at least 11 incise wounds on her body. The prosecutor's theory was that Young forced Desanee to drive to a location less than a mile from where he had a black Pontiac GTO parked. He then drove the GTO to Romester Ushery's home and Ushery gave him a ride back to his house before his stepdaughters noticed he was missing. Young essentially argued that the prosecutor had no evidence that he had killed Desanee and that the entire case was built on conjecture, not reasonable inferences.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Young argues that there was insufficient evidence to support his conviction. We review de novo challenges to the sufficiency of the evidence. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). When evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id*. at 377-378. We do not interfere with the jury's determinations regarding the weight of the

-1-

evidence or the credibility of witnesses. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014), citing *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "[A]ny conflict in the evidence must be resolved in the prosecution's favor." *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005).

## B. ANALYSIS

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010); see also MCL 750.316(1)(a). Further, "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Young asserts that there was insufficient evidence that he killed Desanee with premeditation and deliberation.

" 'To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.' " *People v Bass*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 327358); slip op at 12, quoting *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998). At least some period of time between the initial intent to kill and the actual killing "is necessary to establish premeditation and deliberation." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). "However, the time required need only be long enough 'to allow the defendant to take a second look.' " *Unger*, 278 Mich App at 229, quoting *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992). " 'Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation.' " *Bass*, ___ Mich App at ___; slip op at 12, quoting *Plummer*, 229 Mich App at 301. Factors that may establish premeditation include: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *Bass*, ___ Mich App at ___; slip op at 12 (citation and quotation marks omitted).

Here, a reasonable inference of premeditation can be inferred from Young and Desanee's previous relationship. Young and Desanee were married. There was testimony, however, that Young thought Desanee was cheating on him. There was also testimony supporting an inference that Young was cheating on Desanee, as evidenced by the significant number of contacts between his phone and Ushery's phone. Further, the day before Desanee's body was discovered, she went for a walk with Young and Young's stepson. Desanee returned by herself and was upset. Then after midnight, she had an argument with Young in the kitchen of their home. Desanee then said that she was leaving the house.

Additionally, the circumstances of the killing and Young's actions afterward also suggest premeditation. Desanee was found in the driver's seat of her Durango. There was blood splatter on both the driver's and the passenger's seat, which allows for a reasonable inference that Desanee was killed inside the vehicle. Further, her body was located less than a mile from Michael Peterson's house, which is significant because Young kept a black Pontiac GTO in Peterson's driveway.

Peterson testified that around 3:00 a.m., he heard a car start outside and thought that someone was stealing Young's vehicle. He looked out the window and saw the GTO was being backed out of the driveway. Peterson stated that because he could not see who was driving, he pointed a gun at the vehicle and yelled for the person to stop. He said that the car stopped, Young rolled down the window, and identified himself before quickly backing down the driveway and driving away. Peterson testified that he did not see Young's other vehicles in the area. Peterson called Young for an explanation a few times, but the call went straight to voicemail. He also texted Young, but did not get an immediate response. Peterson eventually reached Young on the phone, and Young said that he had been sleeping and laughed. Peterson hung up, but Young called back and told Peterson that if anyone asked Peterson should tell them that he had not seen Young that night. This evidence allowed the jury to find that Young was in the area and that he did not drive himself, which in turn allowed for the reasonable inference that he had driven to the area with Desanee in her vehicle. Further, the fact that he did not answer his phone right away and that he told Peterson to lie about seeing him that night suggests that he was attempting to cover-up his presence in the area.[1]

There was also testimony that the police located Young's GTO in the driveway at Ushery's home. Cell phone analysis showed that Young's phone had two contacts with Ushery's phone between 3:00 a.m. and 4:30 a.m. on June 2, 2014. It is not unreasonable to infer from that evidence that after leaving Peterson's house in the GTO, Young traveled to Ushery's house and left his vehicle there. Additionally, there was testimony that Ushery had a vehicle and could drive, and the cell phone analysis showed that her phone was moving, which infers that she drove Young back to his house where he was seen by one of his stepdaughters around 4:00 a.m. or 4:30 a.m. Finally, there was testimony that Desanee's keys were located in her room, suggesting that her murderer brought the keys back to the house and left them in Desanee's room.[2]

We also consider that evidence about "the weapon used and the location of the wounds inflicted," *Bass*, ___ Mich App at ___; slip op at 12 (citation omitted), can be evidence of premeditation. Here, the medical examiner testified that Desanee was stabbed 24 times and had a minimum of 11 incise wounds over her body. Considering that Desanee was stabbed to death

---

[1] Likewise, Peterson testified that Young approached him at his workplace several days after the murder. Peterson recounted that he told Young that Young had messed up his life and that Young responded that he knew but did not think anyone but Peterson saw him taking the GTO. When Peterson told him that his neighbor also saw Young taking the GTO, Young responded that he would stick to his alibi, which was that his daughter saw him at home that night. Because this incident occurred several days after the murder, it is not helpful to show premeditation. Rather, this testimony allowed the jury to infer that Young was in fact the individual who killed Desanee based on the steps he took to conceal his presence in the area the night she was murdered.

[2] There was also testimony that Desanee's keys were never located; however, we must view the evidence in the light most favorable to the prosecutor. *Harrison*, 283 Mich App at 377-378.

in front of an abandoned house conveniently located less than a mile from a vehicle Young had access to, the number of stab wounds permits an inference that Young's thought process was "undisturbed by hot blood," *Plummer*, 229 Mich App at 301-302, and he had time to think between each blow, but continued the assault.

Therefore, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support a finding beyond a reasonable doubt that Young killed Desanee with premeditation and deliberation.

## III. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

In a standard 4 brief, Young argues that the prosecutor committed misconduct, when during rebuttal argument, she argued facts not in evidence and attacked Young's lawyer's character. Because Young did not contemporaneously object to the alleged misconduct and ask for a curative instruction, his claims of prosecutorial misconduct are unpreserved. See *Bennett*, 290 Mich App at 475. We review unpreserved claims of prosecutorial misconduct for "outcome-determinative, plain error." *Unger*, 278 Mich App at 235. To establish plain error affecting substantial rights, "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Unger*, 278 Mich App at 235 (citation omitted).

### B. ANALYSIS

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court "consider[s] issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

Young argues that the prosecutor committed misconduct by attacking his lawyer's character when, during rebuttal argument, she stated, "The lies are told by him." A prosecutor may not make a personal attack against defense counsel, *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), or "suggest that defense counsel is intentionally attempting to mislead the jury," *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). However, an " 'improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.' " *Watson*, 245 Mich App at 593, quoting *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). The prosecutor's comment that Young's lawyer was the one telling lies was made in direct response to Young's lawyer's comments during closing argument. Young's lawyer stated: "You see, the prosecutor, in her— and she's a very good story teller, animated, she's a very good story teller, and if after this career she decides to become a novelist, she will probably do great. But it's fiction. And it's twisting what happened." Accordingly, because the prosecutor's comment was a fair response to

Young's lawyer's comments, there is no error requiring reversal. See *Watson*, 245 Mich App at 593.

Young also asserts that the prosecutor committed misconduct by arguing facts not in evidence when during rebuttal argument she stated:

> But I do know the evidence shows that he killed her in that car because she's in the driver's seat and the blood is all in the car. He didn't—he didn't move her body over there. And he probably didn't follow her. I mean, there is no evidence to suggest that. What it suggests is that she walked out and some point he forced her to that vehicle, brought her to where he knew he had a getaway vehicle and killed her. That is the evidence.

Prosecutors may "argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case," but "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 236, 241. Here, as indicated above, the facts allowed for a reasonable inference that Young forced Desanee to drive him to a location close to Peterson's house and that he killed her in the vehicle. Therefore, the prosecutor's argument was supported by facts in evidence and was not improper.

## IV. MOTION TO QUASH

Finally, Young argues that the trial court abused its discretion when it denied his motion to quash the district court's bindover. "A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial." *People v Jenkins*, 244 Mich App 1, 14; 624 NW2d 457 (2000). However, we need not consider Young's challenge to the court's bindover decision. Any error related to a bindover at the preliminary examination is rendered harmless if the defendant is properly convicted at trial on the basis of sufficient evidence. *People v Bosca*, 310 Mich App 1, 45; 871 NW2d 307 (2015). As discussed above, sufficient evidence existed to convict Young of first-degree murder.

Affirmed.

/s/ William B. Murphy
/s/ Christopher M. Murray
/s/ Michael J. Kelly

-5-