*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES DOUGLAS FRISBIE,

Defendant-Appellant.

UNPUBLISHED
May 23, 2025
10:20 AM

No. 370286
Kent Circuit Court
LC No. 21-008822-FH

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

BOONSTRA, J. (*dissenting*).

I respectfully dissent. In my view, the trial court correctly denied defendant's motion to suppress because the initial seizure of his cell phone was a valid warrantless seizure, and because defendant consented to the subsequent search of the phone. Additionally, the district court correctly bound defendant over for trial because the prosecution presented sufficient evidence that defendant had committed the crime of perjury during an investigative subpoena examination.

## I. SEARCH AND SEIZURE

The majority concludes that the trial court erred by denying defendant's motion to suppress evidence found on his cell phone. I disagree. Although the "search and seizure" of private property by the government is often treated as a single event, there are important differences between a search and a seizure. See *People v Hughes*, 506 Mich 512, 529-530; 958 NW2d 98. A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *People v Serges*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 355554), slip op at 6 (quotation marks and citations omitted). "A search occurs under the Fourth Amendment when the government violates the subjective expectation of privacy that society recognizes as reasonable." *Id*. (quotation marks and citations omitted).

The majority holds that defendant's consent to the *search* of his cell phone was coerced, and it therefore skips over any consideration of whether the initial seizure of defendant's phone was a valid warrantless seizure. I conclude that the two must be analyzed separately, and I will accordingly first analyze the initial seizure of defendant's phone and then the subsequent search.

-1-

We review for clear error a trial court's findings of fact at a suppression hearing, and we review de novo questions of constitutional law and the trial court's ultimate decision on a motion to suppress. *People v Woodard*, 321 Mich App 377, 382-383; 909 NW2d 299 (2017).

A warrantless seizure, like a warrantless search, is per se unreasonable under the Fourth Amendment, unless an exception to the warrant requirement is present. *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). The warrantless seizure of a defendant's cell phone, regardless of consent, was squarely addressed by this Court's recent decision in *People v Evans*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 371021). In *Evans*, this Court noted that an exception to the warrant requirement exists for seizures when, looking at the totality of the circumstances from the perspective of law enforcement, probable cause exists to believe that the property holds evidence of a crime and there is "more than a mere possibility that there is a risk of the immediate destruction or removal of evidence." *Id*. at ___; slip op at 4. Regarding cell phones specifically, this Court observed that "courts at both the federal and state level have been fairly uniform in concluding that, when police have (1) probable cause to believe evidence of a crime is contained in a cell phone and (2) a legitimate concern that the information could be deleted from that cell phone, police act reasonably in seizing the phone pending the diligent seeking of a search warrant." *Id*. at __, slip op at 5-6 (citations omitted). This Court then concluded that the seizure of the defendant's cell phone in that case was reasonable under the totality of the circumstances:

> [I]t is the combination ("totality of the circumstances") of the ability to quickly delete evidence from these phones, the admitted evidence of a crime on the phone, defendant's awareness of the potential crime and the police investigation, and his initial reluctance to turn it over, which together created a sufficient basis for Dole to reasonably believe that the evidence could be destroyed if the phone was not immediately seized pending obtainment of a search warrant. . . . Contrary to defendant's argument, the prosecution was not required as a matter of law to present evidence showing defendant's actual intent to delete information before Dole could seize the cell phone." [*Evans*, ___ Mich App at ___; slip op at 7.]

As in *Evans*, defendant in this case contacted police and told them that he had information concerning a potential crime; defendant was thus aware of the potential crime and the police investigation. The investigative subpoena examination provided information from which law enforcement could conclude that evidence of the crime may have existed on defendant's phone, inasmuch as defendant testified to making and receiving phone calls that might have involved the case and to having the same phone number since 1990.[1] Defendant was also extremely reluctant to turn over his phone. Although there are some factual differences, on the whole I conclude that it was objectively reasonable for police to conclude that "defendant's knowledge that his phone contained potential criminal evidence, and that police were actively investigating the circumstances of the crime, coupled with the ease of deleting evidence from cell phones" created an imminent risk of destruction of evidence from defendant's phone. *Id*. at __; slip op at 7-8.

---

[1] The majority finds it notable that defendant did not testify to possessing the same physical phone since 1990, but this does not undermine the basis for seizing defendant's phone.

Accordingly, regardless of whether defendant consented to the initial seizure of his phone, that seizure was valid. *Woodard*, 321 Mich App at 382-383.

A difference between this case and *Evans* is that the police in *Evans* obtained a warrant for the subsequent search of the defendant's phone. See *id*. at ___; slip op at 3. In this case, the police did not do so, but that is simply because defendant opted to sign a form clearly indicating his consent to the search. The majority holds that this consent was coerced, based on the earlier conversation between defendant and the prosecutor in which the prosecutor informed defendant that his phone was going to be *seized* regardless of his consent, and that defendant would get his phone back faster if he consented to a search rather than requiring the prosecutor to obtain a search warrant. I disagree that defendant's consent was coerced.

The record shows that the prosecutor gave defendant truthful information about what was happening with his cell phone and how his choices would impact the length of time until it would be returned to him. As stated, police and the prosecutor had probable cause to believe that evidence existed on defendant's cell phone and held a legitimate concern that the information could be deleted from that cell phone. See *Evans*, ___ Mich App at ___; slip op at 5-6. Therefore, the prosecutor's statements indicating that defendant had no choice about whether police seized his phone were factually and legally correct. Further, the prosecutor accurately informed defendant that the police could retain his phone for a reasonable time while pursuing a search warrant, and that he would then be separated from his phone for a longer period of time than if he consented to the search. While this information was undoubtedly considered by defendant when deciding whether or not to consent to a search of his phone, and while defendant undoubtedly was upset and frustrated that the search warrant process would leave him without his phone for a longer period of time, this does not equate to coercion. The prosecutor gave defendant accurate information that was relevant to his decision whether to consent, and he weighed that information and made the choice to sign the consent form.[2] The subsequent search of defendant's phone was therefore valid, based on defendant's consent. *Woodard*, 321 Mich App at 382-383.

For these reasons, the trial court did not err by holding that neither the search nor the seizure of defendant's phone violated his Fourth Amendment rights. Accordingly, the trial court did not err by denying defendant's motion to suppress. *Id*.

## II. BINDOVER

The majority also holds that the trial court erred by denying his motion to quash the information and by affirming his bindover from the district court. I disagree. As the majority

---

[2] As discussed in *Evans*, it is well-established in our caselaw that a delay may exist between a possessory seizure and the issuance of a search warrant, as long as the police act diligently in pursuing that warrant. *Evans*, ___ Mich App at ___; slip op at 8-9. Delays of significantly longer than a week have been deemed reasonable under the circumstances of those cases. See *id*. at 9 (collecting cases). There is no evidence on this record that the prosecutor or law enforcement ever threatened defendant with an *unreasonable* delay in obtaining a search warrant.

correctly states, we review a bindover decision de novo to determine whether the district court abused its discretion. *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 583 (2022).

Defendant was bound over on a charge of perjury during an investigative subpoena examination. MCL 767A.9(1) provides in relevant part:

> A person who makes a false statement under oath in an examination conducted under this chapter knowing the statement is false is guilty of perjury punishable as follows:
>
> (a) Except as provided in subdivision (b), by imprisonment for not more than 15 years.
>
> (b) If the false statement was made during the investigation of a crime punishable by imprisonment for life, by imprisonment for life or for any term of years.

Defendant argued before the trial court, and argues before this Court, that the prosecution failed to prove that probable cause existed to believe that defendant had made a false statement during the investigation of a homicide (which is an offense punishable by imprisonment for life); specifically, he argued that the prosecution failed to establish probable cause that a murder had occurred.[3] While the majority accepts this argument, I do not.

A district court must bind over a defendant when the prosecution has presented sufficient evidence of each element of the crime charged to establish probable cause that a felony was committed and defendant was the one who committed it. See *People v Jenkins*, 244 Mich App 1, 14; 624 NW2d 457 (2000); *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). In this case, defendant was charged with perjury under MCL 767A.9(1)(b).[4] MCL 767A.9(1) requires proof of four separate elements: (1) defendant was under oath, (2) the examination was conducted under the investigative subpoena statute, (3) defendant provided a false statement, and (4) defendant knew the statement was false when he made it. Although MCL 767A.9(1)(a) provides that a perjury conviction is generally punishable by imprisonment for not more than 15 years, MCL 767A.9(1)(b) provides for imprisonment for life or any terms of years if the defendant's false statement was made during the investigation of a crime punishable by imprisonment for life. Defendant does not challenge the district court's bindover decision regarding the initial four elements; therefore, the only issue presented to this Court is whether the

---

[3] As the majority notes, the underlying investigation related to the 1981 disappearance of Deanie Peters. Although a "presumptive death" certificate was issued in 1991, listing her cause of death as "unknown," her body has not been recovered.

[4] Although the felony information specifies that defendant was charged under MCL 767A.9(1)(b), a proper reading of MCL 767A.9 reveals that the offense charged is that of perjury under MCL 767A.9(1); subsections (a) and (b) of that provision merely provide for different punishments under different circumstances.

district court had probable cause to believe, in this case, that defendant's allegedly false statement was made during a murder investigation.

As noted, the alleged crime in this case was that of perjury under MCL 767A.9(1). Violation of MCL 767A.9(1)(b) is impossible to commit without committing a violation of MCL 767A.9(1)(a), and requires the jury to additionally find a disputed factual element—that the investigation was of a crime punishable by imprisonment for life. Accordingly, a violation of MCL 767A.9(1)(a) is a lesser-included offense of a violation of MCL 767A.9(1)(b). See *People v Cornell*, 466 Mich 335, 360; 646 NW2d 127 (2002). Consequently, and because defendant does not challenge the four elements required to be established under MCL 767A.9(1)(a), the trial court properly bound defendant over for trial on the felony charge of perjury during an investigative subpoena investigation, even if there had in fact been no evidence presented that the underlying investigation was of a crime punishable by imprisonment for life. See MCL 767A.9(1)(a); *People v King*, 412 Mich 145, 154; 312 NW2d 629 (1981) (noting that a district court may bind over a defendant on a lesser offense than that charged in the information); *People v Harris*, 159 Mich App 401, 405; 406 NW2d 307 (1987) ("[E]ven where the charged offense has not been established, if a lesser-included offense is established, then defendant should be bound over for trial on that charge."). Whether the underlying investigation was of a crime punishable by imprisonment for life could have been addressed by the trial court at a later time in the proceedings. See *People v Goecke*, 457 Mich 442, 458; 579 NW2d (1998) (holding that prosecution may move in the circuit court to amend the information to add a greater offense); MCL 767.76. For that reason alone, I would affirm the bindover decision.

Moreover, defendant's arguments, and the majority's analysis on this issue, conflate the issue of whether there was probable cause to believe that a *murder had been committed* with whether there was probable cause to believe that defendant had made false statements under oath *during a murder investigation*. The majority's reference to the concept of *corpus delicti* betrays this confusion; defendant was not bound over on a murder charge, nor had defendant confessed to a murder for which there was no independent corroborating evidence. See *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995) (The *corpus delicti* rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur.") The fact that the investigation has not yet borne fruit in the form of evidence sufficient to support charging a person or persons with murder is not, to my mind, dispositive of whether the statements were made during a murder investigation. The Legislature, in drafting MCL 767A.9(1)(b), did not require that the statements be made during a *successful* investigation that results in a defendant being charged, bound over, or convicted of murder or other life offenses; nor did it require that the investigation have progressed to the point where the *corpus delicti* has been established. I would not read those requirements into the statute or require that the prosecution prove a "case within a case" at the bindover stage. Defendant was informed prior to testifying under oath that the investigative subpoena was issued in relation to a murder investigation. The district court was presented with evidence, in the form of testimony from law enforcement officers, that the investigation into Deanie Peters's disappearance was being treated as a murder investigation. Therefore, even if this issue were pertinent to the bindover decision at all, nothing more was required to satisfy the

additional bindover requirement that "the investigation [was] of a crime punishable by imprisonment for life." MCL 767A.9(1)(b). I would accordingly affirm the trial court's denial of defendant's motion to quash the information.

For these reasons, I respectfully dissent.


/s/ Mark T. Boonstra