*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES DOUGLAS FRISBIE,

Defendant-Appellant.

UNPUBLISHED
May 23, 2025
10:20 AM

No. 370286
Kent Circuit Court
LC No. 21-008822-FH

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

On June 24, 2021, defendant testified pursuant to a prosecutor's investigative subpoena, and at the conclusion of that hearing, the prosecutor seized defendant's cell phone. Thereafter, the prosecution charged defendant with one count of perjury, MCL 767A.9(1)(b), as a third-offense habitual offender, MCL 769.11. In this interlocutory appeal, defendant appeals by leave granted,[1] arguing that the trial court: (1) violated defendant's constitutional rights by denying his motion to suppress the search and seizure of his cell phone, and (2) misinterpreted MCL 767A.9(1)(b) when it held that the prosecution could assert that it was investigating a homicide without sufficient supporting evidence. We reverse the trial court's order denying defendant's motion to suppress, and we remand, in part, for further proceedings consistent with this opinion.

## I. RELEVANT FACTS

Deanie Peters disappeared in 1981, and a "presumptive death" certificate was issued in 1991, listing her cause of death as "unknown." On June 24, 2021, defendant testified pursuant to an investigative subpoena. Defendant was informed that the Kent County Prosecutor's Office and the Kent County Sheriff's Department were investigating "possible violations of state criminal

---

[1] *People v Frisbie*, unpublished order of the Court of Appeals, entered October 22, 2024 (Docket No. 370286).

laws involving the 1981 murder of Deanie Peters." After the prosecutor finished questioning defendant, the following exchange occurred:

[*Prosecutor*]: And then—okay. Here's the one you're gonna hate the most. We're taking your phone.

[*Defendant*]: No. I gotta have my phone. I do business with that.

[*Prosecutor*]: I know you do.

[*Defendant*]: No, no, nope, nope, no.

[*Prosecutor*]: Here's the thing—

[*Defendant*]: No—hell, no, I ain't givin' you my phone.

[*Prosecutor*]: It's fine—it's fine. Here's the thing. You don't have to consent. You have a choice. You can consent and you—it's totally up to you. Let me finish. I know you're mad about it. I would be too.

[*Defendant*]: I'm not givin' you my phone.

[*Prosecutor*]: Okay.

[*Defendant*]: I run—that's my business.

[*Prosecutor*]: I understand.

\* \* \*

[*Defendant*]: I'm not giving you my phone.

[*Prosecutor*]: But we have probable cause—

[*Defendant*]: I let him[2] use my phone. He looked through it all he wants.

[*Prosecutor*]: Okay. We have probable cause to take the phone with a search warrant if we need—and get a search warrant if we need to. So I understand. You don't have to consent. We'll just get the search warrant. We have probable cause to have your phone. You have your phone on you right now?

[*Defendant*]: Yeah.

[*Prosecutor*]: Okay. You need to give it to the detective—

---

2  Defendant appeared to be referring to a detective who was the only other male in the room.

[*Defendant*]: No, I'm not givin' my phone to—

[*Prosecutor*]: Okay.  You're gonna give it to the detective.

[*Defendant*]: I got—I gotta make all kinds of phone calls when I walk out of here.

[*Prosecutor*]: Yup.  And you have four other phones at your business.  I'm sure you have access to other cell phones.

[*Defendant*]: I don't have—no.

[*Prosecutor*]: Jim—

[*Defendant*]: I don't have—no—

[*Prosecutor*]: —you don't have a choice.

[*Defendant*]: Hell no.

[*Prosecutor*]: You don't have a choice.

[*Defendant*]: I—bullshit, I don't.

[*Prosecutor*]: You don't have a choice.

[*Defendant*]: Then we're all done.

[*Prosecutor*]: You're not leavin', okay.

[*Defendant*]: I'm not giving you my phone.

[*Prosecutor*]: Okay.  You're gonna—we're gonna take your phone because we have probable cause to take it, and we'll get a search warrant to search it.  You don't have to consent and you have every right not to.  It'd take probably a week to get it back, maybe a few days less.

[*Defendant*]: We'll get it—no, you're not keepin' my phone for a fucking week.

\* \* \*

[*Prosecutor*]: Listen.  If people consent, then we get a favor from the police department and they put it to the front of the line.  They download it and they get it back to you in a day.  If you want to consent, we'll do it that way.  If not, the—

[*Defendant*]: Fine.  I gotta have my fuckin' phone back and you guys gotta pay me for the times I miss—I'm gonna miss some stuff.

[*Prosecutor*]: Are you consenting then?

-3-

[*Defendant*]: I'm gonna let you use my phone.

[*Prosecutor*]: Are you consenting to us taking the phone to download it?

[*Defendant*]: Yes.

[*Prosecutor*]: And then we'll give it back in a day.

[*Defendant*]: Yes.

[*Prosecutor*]: Okay.  That's up to you, totally up to you.

[*Defendant*]: And you know what—and I am not chasing for it.  This is a—this is a bunch of bullshit for me comin' down here as it is.  This is a—you know—I'm not gettin' paid for it, $17 an hour.  I mean, I gotta be in Detroit, I gotta be in Indianapolis—

[*Prosecutor*]: I know, I understand.

[*Defendant*]: I got so much fuckin' work—

[*Prosecutor*]: I know it's a—

[*Defendant*]: —and I don't have time—and excuse my french—but now is when I'm pissed off 'cause you're getting in my livelihood.

[*Prosecutor*]: I understand.

[*Defendant*]: You know—

[*Prosecutor*]: I know.

[*Defendant*]: I came down here voluntary.  I don't know no fuckin' bullshit about this girl, what happened to her, anything like that.  I would like to help, but I don't know.  But now when you take my phone, that's a bunch of bullshit.

[*Prosecutor*]: I understand.  I understand, I'd be upset too.  Let me do this.  For the record, I have to read the following information to every witness before they're done, and we're done.  So—and this is for your protection, so please listen closely, okay.  The testimony you just gave was under oath.  That means it is subject to criminal prosecution if it was false in any way and you knew it was false in any way.  However, if any of the testimony you gave today was false and you knew it was false, you may avoid criminal prosecution for those statements by telling the truth at this time . . . .

[*Defendant*]: I have nothing to hide.  I'm not lying about nothin'.

\* \* \*

[*Defendant*]: You know, I'm really fuckin' pissed 'cause I'm buying Dogecoin right now and I gotta fuckin' have my phone to do it, 'cause if it goes up and you guys fuck me out of $10,000, I'm gonna be really pissed off.

[*Prosecutor*]: I understand.

[*Defendant*]: I'll be fuckin' pissed.

[*Prosecutor*]: We'll turn it around as quickly as we can. It won't alter the phone in any way, okay. All right. All right, that's it.

[*Defendant*]: I mean, I'm gonna be fucking pissed.

[*Prosecutor*]: That's all we have for you today. I'm sorry for the inconvenience.

[*Defendant*]: I'm really fucking pissed. I mean, this is a bunch of bullshit. Here's my phone.

[*Detective*]: Here, I'll just have you fill out—

[*Defendant*]: I ain't fuckin' signin' nothing.

[*Detective*]: This is your consent, okay. All you gotta do it—

[*Defendant*]: I just said—I just told you that. You want me to sign—you know I'm pissed, I'm fucking pissed.

The examination concluded at 12:13 p.m. Thereafter, defendant signed a consent form for a search of his cell phone, which provided as follows:

> I, [defendant], understand I am not required to submit to the collection of data evidence without a court order. However, I do hereby authorize investigators to collect any data from my cellular phone they deem pertinent to their investigation.
>
> This data may include any contact information, phone book list, call detail from incoming or outgoing calls, text messaging, including deleted messages, photos or videos, information stored on a memory card.
>
> This written permission is being voluntarily given by me without threats or promises of any kind. I further understand this evidence may be used in connection with a criminal investigation.

The form indicates that a detective witnessed defendant signing the form and that the form was signed at 12:15 p.m.

In July 2021, the prosecutor filed a one-count complaint, which provided as follows:

The complaining witness says that on the date and at the location described, contrary to law:

**Count 1: PROSECUTORS INVESTIGATIVE SUBPOENAS—LIFE OFFENSE—PERJURY**

[Defendant] did knowingly make a false statement under oath in an examination conducted by a prosecuting attorney pursuant to a subpoena issued to investigate the commission of a HOMICIDE, a crime punishable by life imprisonment, by testifying as follows: HE LIED REGARDING INFORMATION, KNOWLEDGE, AND/OR HIS PRIOR INVOLVEMENT IN THE INVESTIGATION, INCLUDING BUT NOT LIMITED TO STATEMENTS HE MADE TO LAW ENFORCEMENT AND OTHERS ABOUT POSSIBLE SUSPECTS AND/OR WITNESSES. Contrary to MCL 767A.9(1)(b). [767A.91B]

Following a preliminary examination, defendant was bound over for trial and charged with perjury during an investigative-subpoena examination. The count in the information was identical to the one in the complaint. The information also charged defendant as a third-offense habitual offender, pursuant to MCL 769.11.

In November 2021, defendant moved to quash the bindover, arguing that he was bound over on the basis of inconsistencies in testimony, which did not establish perjury. The trial court denied defendant's motion, reasoning that "ample evidence was presented below to support the bindover," and that defendant's arguments were "more appropriately made to a jury before it determines whether the defendant has been sufficiently proved guilty beyond a reasonable doubt." Defendant applied for leave to appeal the trial court's order, which a panel of this Court denied. *People v Frisbie*, unpublished order of the Court of Appeals, entered November 3, 2022 (Docket No. 361821). The Michigan Supreme Court subsequently denied leave. *People v Frisbie*, 986 NW2d 910 (2023).

In September 2023, defendant: (1) moved the trial court to suppress evidence found during the search of his cell phone because the totality of the circumstances demonstrated that defendant had not consented to the search, and (2) filed an objection to the information because Peters' disappearance "cannot be a homicide or a murder investigation and/or cannot be an investigation about a life offense."

In December 2023, the trial court issued an opinion and order denying defendant's motion and objection.[3] Regarding defendant's motion to suppress, the trial court first found that defendant had voluntarily consented, reasoning as follows:

While it is certainly true that Defendant whined and complained about not being able to have his cellphone, he nevertheless consented freely and voluntarily, as shown by this exchange with the prosecutor:

---

[3] According to the register of actions, a hearing was not held on the motion or the objection.

"Q.      Are you consenting then?

A.      I'm gonna let you use my phone.

Q.      Are you consenting to us taking the phone to download it?

A.      Yes.

Q.      And then we'll give it back in a day.

A.      Yes.  That's up to you, totally up to you."

To now claim that consent was not freely given is not only unsupported but directly proved to be untrue.

The trial court further found that there was probable cause to seize defendant's phone—even if defendant had not consented—reasoning as follows: "Defendant testified at the investigative subpoena proceeding that he still possessed the same telephone that he had in 1990,[4] and further testified that since then he had used that phone to communicate with many people about the Deanie Peters disappearance . . . ."  But, the trial court rejected the prosecutor's argument that there were exigent circumstances that would have permitted a warrantless search of defendant's phone, stating that "[s]imply because there is a risk of loss or destruction of cell phone evidence does not mean there is an exigency in every cell phone case."

Regarding defendant's objection to the information, the trial court first reasoned that defendant was raising a new sufficiency of the evidence theory that was not included in his previous motion to quash despite existing at the time that his motion to quash was filed.  The trial court found this improper and stated that "[d]efendant will have a future opportunity to make a sufficiency argument at trial, in a properly made motion for a directed verdict."  The trial court also found defendant's *corpus delicti* argument to lack merit, reasoning that defendant was

> charged with lying about a presumed murder while under oath, not committing the underlying murder.  Defendant would change the law to require that in a perjury prosecution during a criminal investigation of a substantive crime the People would have to prove the perjury and also the underlying crime that was being investigated. Not only would that impede the purpose of using investigative subpoenas to investigate crimes, it would hinder the ability to bring perjury prosecutions despite a witness lying under oath.  It would also return the law to that prior to *People v [Lively]*, 470 Mich 248[; 680 NW2d 878] (2004), which rejected the requirement in a perjury prosecution to allege and prove the materiality of the alleged perjurious statement.

---

[4] Notably, defendant had testified that he had the same cell phone *number* since 1990, not that he had the same *phone* since 1990.

Defendant moved for reconsideration of the trial court's December 2023 opinion and order, which the trial court denied. Defendant now brings this interlocutory appeal.[5]

## II. SEARCH AND SEIZURE OF DEFENDANT'S CELL PHONE

Defendant first argues that the trial court erred by denying his motion to suppress the search and seizure of his cell phone. We agree.

### A. STANDARD OF REVIEW

"When reviewing a decision on a motion to suppress, we review a trial court's factual findings for clear error," and we review de novo the trial court's ultimate decision on the motion. *People v Mazzie*, 326 Mich App 279, 288-229; 926 NW2d 359 (2018) (quotation marks and citations omitted). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (quotation marks and citation omitted). "We review de novo the issue whether the Fourth Amendment was violated and the issue whether an exclusionary rule applies." *Mahdi*, 317 Mich App at 457. "The trial court's decision regarding the validity of the consent to search is reviewed by this Court under a standard of clear error." *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001).

### B. ANALYSIS

"Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures." *People v Armstrong*, 344 Mich App 286, 295; 1 NW3d 299 (2022). See US Const, Am IV; Const 1963, art 1, § 11. "Searches and seizures, according to the United States Constitution and the Michigan Constitution, must be conducted reasonably, and in most cases that requires issuance of a warrant supported by probable cause, in order for the results to be admissible." *Armstrong*, 344 Mich App at 295 (quotation marks and citation omitted). "Searches or seizures conducted without a warrant are per se unreasonable, subject to several well-delineated exceptions." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). Accordingly, "to show that a search was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *Id*. (quotation marks and citation omitted).

"Consent is an exception to the warrant requirement." *Mahdi*, 317 Mich App at 460. "The consent exception permits a search and seizure if the consent is unequivocal, specific, and freely and intelligently given." *Id*. "Whether consent to search is freely and voluntarily given presents a question of fact that must be determined on the basis of the totality of the circumstances." *Id*. (quotation marks, citation, and alteration omitted). "Consent is not voluntary if it is the result of coercion or duress." *People v Bolduc*, 263 Mich App 430, 440; 688 NW2d 316 (2004).

"[T]he exclusionary rule prohibits the introduction into evidence of materials and testimony that are the products or indirect results of an illegal search, the so-called 'fruit of the

---

[5] Trial court proceedings have been stayed pending this appeal.

-8-

poisonous tree' doctrine." *People v Stevens*, 460 Mich 626, 633-634; 597 NW2d 53 (1999). The remedy for a violation of the Fourth Amendment right against unreasonable searches and seizures is suppression of the unlawfully obtained evidence. *People v Cartwright*, 454 Mich 550, 557-558; 563 NW2d 208 (1997). In this case, defendant argues that the trial court erred by denying his motion to suppress because his consent to the search and seizure of his cell phone was coerced, violating the Fourth Amendment. We agree.

The trial court found that defendant voluntarily consented to the search and seizure of his cell phone on the basis of the following short exchange:

> [*Prosecutor*]: Are you consenting then?
>
> [*Defendant*]: I'm gonna let you use my phone.
>
> [*Prosecutor*]: Are you consenting to us taking the phone to download it?
>
> [*Defendant*]: Yes.
>
> [*Prosecutor*]: And then we'll give it back in a day.
>
> [*Defendant*]: Yes.
>
> [*Prosecutor*]: Okay. That's up to you, totally up to you.

But, this short exchange does not provide the full picture of the prosecution's attempt to obtain defendant's consent.

The totality of the circumstances reflect that defendant did not voluntarily consent to the search and seizure of his cell phone. After the prosecutor finished questioning defendant, she told defendant that they were "taking [his] phone." Before defendant consented, the prosecutor told defendant that: (1) she had probable cause to "just get the search warrant"; (2) defendant was "gonna give [his phone] to the detective"; (3) defendant did not "have a choice" in whether he gave up his phone; and (4) defendant could not leave. Defendant then became upset, firing off expletives regarding his frustration with not having his phone for work and telling the prosecutor that he wanted to be paid for the work that he was going to miss while they held his phone. Defendant only consented after the prosecutor told him that he would get his phone back "in a day" if he consented, but that he would likely not get it back for about a week if she had to obtain a search warrant. Therefore, the prosecutor's statements that defendant's choice to consent was "totally up to [him]" does not align with the interaction that actually took place. Additionally, although defendant signed a consent form for the search of his cell phone, the form was signed just two minutes after the aforementioned examination concluded, and there is no evidence that defendant's outrage was lessened or that defendant was properly informed of his rights before signing the form.

Because defendant was told that he could not leave, that he did not have a choice in giving his phone up, and that he *was* going to give his phone to the detective, defendant's consent was not "freely and voluntarily given" under the totality of the circumstances, and the consent exception to the warrant requirement was not met. *Mahdi*, 317 Mich App at 460. Accordingly,

the trial court clearly erred by denying defendant's motion to suppress. See *Id*. at 457. Suppression of the unlawfully obtained evidence and any of its products or results is the correct remedy for this illegal search and seizure. See *Cartwright*, 454 Mich at 557-558.

Notably, plaintiff argues that exigent circumstances existed for the *seizure* of defendant's cell phone, reasoning that "the risk of imminent destruction of evidence supported the seizure of Defendant's phone"; therefore, defendant only needed to consent to the *search* of his phone. But, for the reasons previously stated, defendant's consent to the search of his cell phone was coerced, and therefore, invalid. Accordingly, any argument regarding exigent circumstances would fail on its face.

## III. BIND OVER—MCL 767A.9(1)(b)

Defendant further argues that the trial court erred by: (1) binding over defendant on a perjury charge under MCL 767A.9(1)(b) because the prosecutor did not prove that defendant made a false statement during the investigation of a homicide, a life offense; and (2) failing to make a finding regarding an element of defendant's offense at the preliminary examination to establish a proper bindover. We agree.

### A. STANDARD OF REVIEW

"We review de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *People v Hawkins*, 340 Mich App 155, 173; 985 NW2d 853 (2022) (quotation marks and citation omitted). "An abuse of discretion occurs if the court does not select a reasonable and principled outcome." *People v Simon*, 339 Mich App 568, 580; 984 NW2d 800 (2021). "The district court abuses its discretion by binding over a defendant when the prosecution has failed to present sufficient evidence to support each element of the charged offense." *Id*. A trial court also necessarily abuses its discretion when it makes an error of law. *People v Hofman*, 339 Mich App 65, 69; 981 NW2d 112 (2021). "To the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Simon*, 339 Mich App at 580 (quotation marks, citation, and alteration omitted).

### B. ANALYSIS

"The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *People v Hunt*, 442 Mich 359, 362; 501 NW2d 151 (1993). "A district court must bind over a defendant for trial when the prosecutor presents competent evidence constituting probable cause to believe that a felony was committed and that the defendant committed the offense." *People v Jenkins*, 244 Mich App 1, 14; 624 NW2d 457; see MCL 766.13. "A district court's finding of probable cause will not be disturbed unless the determination is wholly unjustified by the record." *Jenkins*, 244 Mich App at 14. The prosecution "need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). A district court "must always find that there is evidence regarding each element of the crime charged or evidence from which the elements may be inferred

in order to bind over a defendant." *People v Hudson*, 241 Mich App 268, 278; 615 NW2d 784 (2000) (quotation marks and citation omitted).

MCL 767A.9(1) governs the sentencing structure for perjury and provides as follows:

> A person who makes a false statement under oath in an examination conducted under this chapter knowing the statement is false is guilty of perjury punishable as follows:
>
> (a) Except as provided in subdivision (b), by imprisonment for not more than 15 years.
>
> (b) If the false statement was made during the investigation of a crime punishable by imprisonment for life, by imprisonment for life or for any term of years.

In this case, defendant was charged with making a false statement under oath during the investigation of a homicide, an offense punishable by life imprisonment, pursuant to MCL 767A.9(1)(b). See MCL 750.316; MCL 750.317. Defendant was bound over by the district court; however, during the preliminary examination, the district court never found that defendant made false statements "during the investigation of a crime punishable by imprisonment for life . . . ." MCL 767A.9(1)(b).

On appeal, defendant argues that the prosecution cannot prove that defendant made a false statement during the investigation of a homicide, a life offense, when no facts were presented to support that a murder, or even a death, occurred. We agree.

As an initial matter, both the trial court and plaintiff believe that a defendant is only allowed to file one motion to quash the bindover, and that, because defendant did not raise this argument in his first motion to quash, defendant can now only raise the argument in a challenge to the sufficiency of the evidence presented at trial; however, neither the trial court nor plaintiff cited any legal authority to support their position that a defendant may only file one motion to quash the bindover. Under MCR 6.110(H), if "on proper motion," the trial court finds that the district court abused its discretion in binding over the defendant for trial, then the court "must either dismiss the information or remand the case to the district court for further proceedings." Importantly, MCR 6.110(H) does not limit a defendant to only filing one motion to quash.

Second, the district court did not make a finding regarding whether defendant made false statements "during the investigation of a crime punishable by imprisonment for life . . . ." MCL 767A.9(1)(b). The district court never even recognized that this was an element of the offense. To properly bind over defendant on the charge, the district court needed to find that evidence existed "regarding each element of the crime charged or evidence from which the elements may be inferred . . . ." *Hudson*, 241 Mich App at 278 (quotation marks and citation omitted). Because the district court never found that defendant made false statements "during the investigation of a crime punishable by imprisonment for life," under MCL 767A.9(1)(b), and, therefore, no finding of an element of the offense was adequately established, the trail court "could have ordered [a] remand for further explanation by the district court. However, declining the

-11-

exercise of such discretion is not, in and of itself, an abuse of discretion requiring reversal." *Hawkins*, 340 Mich App at 179.

Finally, the prosecution argues that "it is entirely reasonable for law enforcement to investigate Peters's disappearance as a murder" because although "Peters's body has never been recovered since her disappearance approximately 43 years ago, much of the testimony at the preliminary examination, as well as at Defendant's [investigative subpoena], concerned accusations of who *killed* Peters—not, for instance, where she was hiding or being hid."

It is undisputed that Peters disappeared in 1981 and that her body has never been found; however, the disappearance of a teenager does not automatically equate with an allegation that they were murdered. See *People v McMahan*, 451 Mich 543, 550; 548 NW2d 199 (1996) ("Absent some showing of criminal agency, there are any number of possible explanations for an individual's disappearance, including death by accidental means."). Moreover, a disappearance alone is insufficient to establish homicide as the underlying offense of perjury. "[T]he corpus delicti of homicide is established when the prosecutor establishes by a preponderance of direct or circumstantial evidence that the victim is dead and that death was the result of some criminal agency." *People v Modelski*, 164 Mich App 337, 342; 416 NW2d 708 (1987). Accordingly, there must be additional evidence suggesting that the disappearance resulted from a criminal act, such as motive, circumstantial evidence, or actions by the defendant that imply guilt. See *Modelski*, 164 Mich App at 342 (holding that the *corpus delicti* of a homicide was established by showing that the victim could not be located and had not been heard from since her sudden disappearance, that the defendant had a motive to kill the victim, and that the defendant's actions suggested that he had murdered the victim); see also *People v Fisher*, 193 Mich App 284, 287-289; 483 NW2d 452 (1992) (holding that the evidence was insufficient to convict a husband of homicide when his wife had disappeared nine years earlier, emphasizing the lack of: a body, direct admission, physical evidence, and a witness to any part of the killing or disposal of the body).

In this case, the only evidence of Peters death was a presumptive death certificate. Without requiring more in such a case, any perjured statement made in the context of a missing-person case would trigger the enhanced penalties associated with MCL 767A.9(1)(b), which might otherwise be unavailable. Therefore, the district court erred by binding over defendant on a perjury charge under MCL 767A.9(1)(b) when no facts were presented to support the victim's murder or death.

Reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen A. Feeney